## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| LEE LAGRONE, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-792-Y |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

Plaintiff Lee LaGrone ("LaGrone") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying his claims for a period of disability and disability

insurance benefits under Title II and supplemental security income ("SSI") under Title XVI of

the Social Security Act ("SSA"). In March 2010, LaGrone protectively filed his applications,

1

alleging that his disability began on March 20, 2010.[1]  (Tr. 10, 197-210.)  His applications for

benefits were denied initially and on reconsideration.  (Tr. 10, 94-101, 106-11.)  The ALJ held a

hearing on June 7, 2011 and issued a decision on July 29, 2011, finding that LaGrone was not

disabled because there were jobs that existed in significant numbers in the national economy that

LaGrone could perform.  (Tr. 10-22, 44-86.)  On August 30, 2012, the Appeals Council denied

LaGrone's request for review, leaving the ALJ's decision to stand as the final decision of the

Commissioner.  (Tr. 1-6.)

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are

governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.  In addition, numerous regulatory

provisions govern disability insurance and SSI benefits.  *See* 20 C.F.R. Pt. 404 (disability

insurance); 20 C.F.R. Pt. 416 (SSI).  Although technically governed by different statutes and

regulations, "[t]he law and regulations governing the determination of disability are the same for

both disability insurance benefits and SSI."  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.

1994).

The SSA defines a disability as a medically determinable physical or mental impairment

lasting at least twelve months that prevents the claimant from engaging in substantial gainful

activity.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir.

1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a

five-step analysis is employed.  20 C.F.R. § 404.1520.  First, the claimant must not be presently

---

[1] LaGrone had previously filed concurrent disability applications in 2007.  (Tr. 10.)  These applications
were denied by an ALJ on March 19, 2010.  (*Id.*)  The Appeals Council, on March 29, 2011, affirmed the ALJ's
denial.  (*Id.*)  The ALJ declined to reopen any prior application, finding no cause to do so.  (Tr. 10-11.)

2

working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th

3

Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III.   ISSUES

In his brief, LaGrone presents the following issues:

1. Whether the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence because it was not based on any medical opinion; and

2. Whether the ALJ's hypothetical questions to the Vocational Expert ("VE") erroneously failed to incorporate all of LaGrone's limitations.

(Plaintiff's Brief ("Pl.'s Br.") at 1-2, 10-21.)

## IV.   ALJ DECISION

In his July 29, 2011 decision, the ALJ found that LaGrone met the insured status requirements of the SSA through the date of the decision and had not engaged in any substantial gainful activity since March 20, 2010, the alleged date of LaGrone's onset of his disability. (Tr. 15.) The ALJ further found that LaGrone suffered from the following severe impairments: "diabetes mellitus, asthma, obesity, degenerative disk disease, and diagnosed depression and anxiety." (Tr. 11.) Next, the ALJ held that none of LaGrone's impairments, or combination of impairments, met or equaled the severity of any impairments in the Listing. (Tr. 11, 16-17.) As to LaGrone's RFC, the ALJ stated:

> The claimant has the [RFC] to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of light work activity as follows: which allows alternating between sitting and standing to alleviate pain and discomfort; which avoids exposure to irritants such as fumes, odors, dust, gases and poorly-ventilated areas; and which is limited to detailed but not complex work.

(Tr. 20.) Next, the ALJ found that LaGrone was unable to perform any of his past relevant work.

(Tr. 21.) However, considering LaGrone's age, education, work experience, and RFC, the ALJ

concluded, based upon the VE's opinion that there were jobs that existed in significant numbers

in the national economy, that LaGrone was not disabled. (Tr. 21-22.)

## V.   DISCUSSION

### A.  RFC Determination

Citing to *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), LaGrone argues that the ALJ's

RFC determination is not supported by any evidence. (Pl.'s Br. at 1-2, 10-18.) Specifically,

LaGrone states:

> Circuit law holds that an ALJ cannot derive a residual functional capacity without the support of a medical opinion—because an ALJ as a layman cannot determine the effects an impairment has on an individual's ability to work. The ALJ rejected the opinions of a non-severe impairment from the Commissioner's own consultants. The only other medical opinion regarding the limiting effects of LaGrone's physical conditions was from his treating physician, Mukhtiaar H. Karjeker, M.D.—which the ALJ also rejected. The mental limitations included in the RFC assessment were based on no medical opinion. Is the ALJ's RFC and corresponding hypothetical question—on which the ALJ relied to find LaGrone not disabled—supported by substantial evidence?

(Pl.'s Br. at 10 (emphasis omitted".) LaGrone argues, in essence, that the ALJ erred in his RFC

determination because there is no medical opinion supporting the physical or mental limitations

found by the ALJ in his RFC assessment. (Pl.'s Br. at 15-18.) In addition, LaGrone states:

5

In particular, there is no medical opinion supporting the ALJ's conclusion that LaGrone is capable of standing and walking "off and on" for a total of 6 hours of an 8-hour workday and lifting 20 pounds at a time and 10 pounds frequently.

The ALJ rejected the two State Agency physicians' opinions of non-severe physical impairments and instead found them legally severe. The only other medical opinions that remained were from LaGrone's treating physician, Mukhtiaar Karjeker, M.D. [("Dr. Karjeker")], whose opinions the ALJ also rejected. . . .

There was no medical opinion contradicting Dr. Karjeker's limitations. The ALJ gave "significant, but not controlling weight" to the findings of consultative examiner Bonnie Lammers, M.D.[,] but Dr. Lammers never assessed any functional limitations. Dr. Lammers' report was forwarded to the DDS physicians who concluded LaGrone's physical impairments were not severe—opinions which the ALJ rejected. Since the ALJ rejected all of the medical opinions in the file, there was no medical opinion supporting his RFC assessment for light work.

Making matters worse, there was no medical opinion assessing the limitations caused by LaGrone's depression and anxiety so the ALJ's lay opinion that LaGrone could perform "detailed but not complex" work was also groundless.

. . . .

The ALJ found depression and anxiety were severe impairments. LaGrone does not dispute these findings. However, LaGrone disagrees with the ALJ's determination that he is capable of "detailed but not complex" work when no doctor or clinical psychologist has made this medical conclusion.

. . . .

At his hearing on June 7, 2011, LaGrone testified Geodon helped control his hallucinations but that he still sometimes felt depressed. The ALJ even acknowledged "situational factors involving LaGrone's perceived illnesses and functional limitations, as well as family stressors apparently exacerbate his diagnosed depression and anxiety. To what extent external facts exacerbated LaGrone's depression and anxiety is

> unknown because neither Dr. Asante-Askuayi or Dr. Haider (or any doctor
> or psychologist) assessed any specific limitations.

(Pl.'s Br. at 15-17 (internal footnotes omitted).)

RFC is what an individual can still do despite his limitations.[2]  Social Security Ruling

("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's

maximum remaining ability to do sustained work activity in an ordinary work setting on a

regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A

regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.

SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an individual can do but the most.  *Id.*

The RFC is a function-by-function assessment, with both exertional and nonexertional[3] factors to

be considered, and is based upon all of the relevant evidence in the case record.  *Id.* at 3-6.  The

responsibility for determining a claimant's RFC lies with the ALJ.  *See Villa v. Sullivan*, 895

F.2d 1019, 1023-24 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform

sustained work activity on a regular and continuing basis and resolve any inconsistencies in the

evidence.  SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and

the extent to which these symptoms can be reasonably accepted as consistent with objective

medical evidence and other evidence.  *See* 20 C.F.R. § 416.1529, 416.929; SSR 96-7p, 1996 WL

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

7

374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (superseded only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

In this case, as stated above, the ALJ found that LaGrone had the RFC to perform light work[4] as long as he could alternate between sitting and standing to alleviate pain and discomfort,

---

[4] Pursuant to the regulations, light work is defined as follows:

Light Work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b). The primary difference between sedentary and most light jobs is that light work requires a good deal of walking or standing. SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). "'Frequent' means occurring from one-third to two-thirds of the time." *Id. at* *6. "Since frequent lifting or carrying requires

avoided exposure to irritants, and was limited to detailed but not complex work.  (Tr. 20.)  In

making the physical RFC determination, the ALJ gave "significant, but not controlling, weight"

to the opinions of Bonnie Lammers, M.D. ("Dr. Lammers"), in a May 2010 consultative physical

exam.[5]  (Tr. 12.)  In the exam, however, Dr. Lammers did not give any opinion as to any

functional limitations that LaGrone's impairments might have on his ability to work.  Instead,

Dr. Lammers found that LaGrone's examination was essentially "normal."  (Tr. 494-97.)  As to

his mental RFC determination, the ALJ appears to rely on the following to conclude that

---

being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.* "Sitting may occur intermittently during the remaining time." *Id.*

[5] In the consultative examination report dated in May 2010, Dr. Lammers stated the following in the section of her report titled "Clinical Impression:"

1.   Back pain.  Physical exam documents back is nontender with no spasms of the cervical, thoracic, or lumbar paraspinous muscles.  Gait is non-antalgic.  Claimant refuses to toe and heel walk.  Range of motion of the lumber spine is full in all planes.  Deep tendon reflexes are 1-2+/4 and bilaterally symmetrical.  Claimant refuses to cooperate for muscle strength testing.  There is no atrophy on careful measurement of the extremities.  Sensory exam appears to be grossly within normal limits of both upper and lower extremities.  Straight leg raise is not assessed due to refusal to cooperate on the part of this claimant.  Objectively, in all areas that I am able to evaluate, this is a normal exam in an uncooperative claimant.

2.   Right foot swelling.  Physical exam documents that the claimant refuses range of motion of the right ankle.  Today there is no synovitis, no subluxations, and no joint effusions.  Gait is non-antalgic.  He refuses to toe and heel walk.  He comes in with a walking stick.  However, he is able to ambulate without the walking stick.  Objectively, this is a normal physical exam in all of the areas that I am able to assess.

3.   Asthma.  Physical exam documents lungs are clear to auscultation and percussion with no CVA tenderness.  Heart exam shows regular rate and rhythm without murmurs, clicks, or rubs.  Objectively, this is a normal exam.

4.   Diabetes Mellitus.  Physical exam documents benign appearing retinal exam.  Examination of heart, pulses, skin, and neurology are well within normal limits.  Objectively, this is a normal exam.

(Tr. 496-97; *see* Tr. 494-97.)

LaGrone "has no more than moderate functional limitations as a result of his diagnosed depression and anxiety:" (1) an April 2011 psychiatric "New Outpatient Assessment" evaluation in which LaGrone was diagnosed with depression and anxiety and given a GAF score of 60; (2) the notes of Dr. Karjeker, and (3) LaGrone's own testimony.  (Tr. 16, 19; *see* Tr. 548-556.) Neither the April 2011 psychiatric examination nor the notes of Dr. Karjeker contain any information regarding the effects LaGrone's mental impairments have on his ability to work.

In *Ripley*, the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion.  67 F.3d at 557.  The Fifth Circuit Court of Appeals, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem[6] but not clearly establishing the effect that condition had on his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work.  *Id.* at 557-58.  The Fifth Circuit rejected the Commissioner's argument that the medical evidence that discussed the extent of the claimant's injuries substantially supported the ALJ's conclusion because the Court was unable to determine the effects of the claimant's condition, "no matter how 'small'" on his ability to work, absent a report from a qualified medical expert.  *Id.* at 558 n.27.

In the present case, as to his physical RFC determination, the ALJ rejected the three physical RFC determinations made by LaGrone's treating physician, Dr. Karjeker, that opined

---

[6] "The evidence that was available for review by the ALJ shows a four year history of surgery, medical examinations, and complaints of pain" as well as the claimant's testimony. *Ripley*, 67 F.3d at 557.

on the effects of LaGrone's condition on his ability to work[7] as well as opinions by the State

Agency Medical Consultant's regarding the severity of LaGrone's impairments, (Tr. 13-14, 21;

*see* Tr. 503-505, 508-11.) "While the ALJ may choose to reject these opinions, he cannot then

independently decide the effects of Plaintiff's . . . impairments on [his] ability to work, as that is

expressly prohibited by *Ripley*." *Shugart v. Astrue*, No. 3:12-CV-1705-BK, 2013 WL 991252, at

*5 (N.D. Tex. Mar. 13, 2013).   In addition, the ALJ could not base his physical RFC

determination on the opinions of Dr. Lammers because Dr. Lammers did not assess LaGrone's

functional limitations.   Consequently, "at [this] point, it became incumbent upon the ALJ to

---

[7] In a "Medical Release/Physician's Statement" dated August 26, 2010, Dr. Karjeker opined that LaGrone was permanently disabled, could sit, stand, or walk for 10 minutes each during a workday, could not lift objects weighing more than 1 pound for more than ½ hour per day, and could not perform any postural activities based on spinal degenerative joint disease, diabetes, and hypertension. (Tr. 13, 505.) The ALJ stated in his decision that he was affording "no weight" to Dr. Karjeker's opinion that LaGrone was disabled. (Tr. 13.)

In a "Work Activity Restriction Form" dated September 2, 2010, Dr. Karjeker opined that LaGrone could not perform sedentary, light, or medium work on a full-time or part-time basis due to the herniated disc in his spine, asthma, and sleep apnea. (Tr. 14, 511.)

In a "Questionnaire to M.H. Karjeker, M.D." dated September 23, 2010, Dr. Karjeker opined the following: (1) that LaGrone's impairments could reasonably be expected to produce fatigue, pain, and shortness of breath; (2) that LaGrone could not consistently perform work requiring him to be on his feet more than two hours in an eight-hour workday; (3) that LaGrone would not be able to consistently perform work requiring him to sit more than six hours in an eight-hour workday; (4) that LaGrone would not be able to consistently perform work requiring him to walk more than two hours in an eight-hour workday; and that LaGrone was not physically capable of lifting and carrying ten pounds frequently and twenty pounds occasionally. (Tr. 14, 508-10.)

As to Dr. Karjeker's opinions, the ALJ also stated:

> Viewing the[] factors [set forth in 20 C.F.R. § 404.1527], I conclude that Dr. Karjeker's opinion as to the claimant's residual functional capacity is not supported by objective findings upon actual examination by this doctor or any other treating or examining source.  I have therefore afforded this treating source opinion very little weight in the determination of disability in this case.

(Tr. 15.) However, it appears that the ALJ actually gave no weight to any of Dr. Karjeker's RFC opinions as Dr. Karjeker never opined that LaGrone was capable of performing, in essence, light work or a modified version of light work as found by the ALJ.

11

obtain an expert medical opinion about the types of work activities that Plaintiff could still perform given [his] impairments." *Id.*

As to his mental RFC, the ALJ relied on medical evidence that did not contain any opinions regarding the effects of LaGrone's mental impairments on his ability to perform his work. Instead, the ALJ appears to have found that LaGrone was limited to detailed, but not complex, work based upon his own lay opinion. However, the ALJ may not play doctor and provide his own opinion as to plaintiff's limitations, especially when that opinion is unsupported by evidence in the record. *See Thibodeaux v. Astrue*, No. 11-592, 2012 WL 1933760, at *7 (E.D. La. May 8, 2012); *see also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

In this case, because the ALJ rejected all medical opinions in the record that might explain the effects of LaGrone's physical impairments on his ability to perform work and there were no such opinions as to LaGrone's mental impairments, there is no medical evidence supporting the ALJ's RFC determination.[8] Consequently, substantial evidence does not support the ALJ's RFC determination, and remand is required.

---

[8] *See Williams v. Astrue*, 355 F. App'x 828, 831-32 (5th Cir. 2009) (reversing and remanding where the ALJ rejected the opinions of the claimant's treating physicians and relied on his own medical opinions as to the limitations presented by the claimant's back problems in determining RFC); *Nesbitt v. Colvin*, No. 3:12-CV-98-BN, 2013 WL 5299261, at *5 (N.D. Tex. Sept. 20, 2013) ("While the ALJ may choose to reject [a doctor's] opinions, she cannot then independently decide the effects of Plaintiff's mental impairments on her ability to perform work-related activities, as that is prohibited by *Ripley*."); *Shugart*, 2013 WL 991252, at *5-6; *Harris v. Astrue*, No. 11-2738, 2012 WL 3150049, at *11 (E.D. La. July 12, 2012); *Newsome v. Barnhart*, No. 3:03-CV-3030-D, 2004 WL 3312833, at *4 (N.D. Tex. Oct. 8, 2004) ("Similarly, although the instant record contains some substantial evidence that [the claimant] suffers from 'mild' fibromyalgia that has improved with medication, the record lacks substantial evidence to support the ALJ's findings concerning *the effect* of this condition on her work-related abilities, i.e., that she can perform light work."). *Cf. Carter v. Colvin*, No. 3:12-CV-01896-BF, 2013 WL 3328691, at *10 (N.D. Tex. July 2, 2013) (finding that ALJ did not violate the standards set forth in *Ripley* because the ALJ considered roughly 523 pages of medical evidence in formulating the RFC determination, including an RFC assessment performed by a doctor in a consultative examination).

Because the Court is remanding the case, the Court will not consider the second issue regarding the hypothetical question to the VE.  However, the Court notes that its finding that the RFC determination is not supported by substantial evidence will necessarily impact this issue. Upon remand, the ALJ should reconsider this issue as well.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## **ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **November 19, 2013** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED November 5, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv